OPINION OF THE COURT
Marilyn L. O’Connor, J.
Ruth A. Stubbs filed her objection to the findings of fact and order on motion signed July 7, 2006, finally putting into effect the findings of fact dated May 10, 1999, which had found that child support should be reduced from $147 per week to $92 per week. No rebuttal was filed in response to the custodial mother’s objection to the order finally entered in 2006 based on the 1999 findings of fact.
The 1999 findings of fact state that “[ojrder is to be submitted by Attorney Conway,” who was the losing attorney. The normal local practice is that the prevailing party prepares the order. However, here the prevailing party, i.e., the father who sought the reduction in child support, had no attorney to submit an order. In such a case hindsight reveals it would have been more effective if the court had drafted the order — instead of expecting the losing attorney to submit it against her client’s interests.
As it turned out, no order was submitted in a timely manner. In fact, no order was submitted for signature from 1999 until *637 early 2006. The issue of what should happen under these circumstances was raised in the father’s application filed March 10, 2006 to reduce child support. In that modification petition he stated that an order dated May 10, 1999 required him to pay $147 per week (para 3.a). Indeed, this court takes judicial notice of the fact that the child support enforcement unit (CSEU) records show that the father continued to pay child support after the May 10, 1999 findings of fact in amounts often greater than $147 per week, and seldom less than that amount. In 2006 he finally sought a reduction in child support claiming his 2005 income was only $11,280. He alleged that “child support should be reduced to reflect this change in income. I would also like to have any arrears reduced to $0.” He did not even seek the elimination of future child support due to past overpayments of child support, though that was a result of the proceedings resulting in this objection.
Oral arguments regarding whether an order should be entered reducing child support to $92 effective January 20, 1999 as set forth in the May 10, 1999 findings of fact were heard by the Support Magistrate who had presided at the 1999 hearing. The court has reviewed the file and the recording of those proceedings. The Support Magistrate issued an order on July 7, 2006 granting the father’s request that she sign an order incorporating the May 10, 1999 findings of fact, stating that was “fair.” She also directed the Monroe County CSEU “to calculate child support pursuant to the Findings of Fact.” In July of 2006 the Monroe County Child Support Enforcement Unit made an adjustment and found that the father had overpaid child support by $12,894.87. The CSEU thus determined that no more child support would be paid by the father to the custodial mother until March 2009. In the meantime, the father’s March 10, 2006 modification petition to reduce child support from $147 is pending, and decision has been reserved by the Support Magistrate.
The mother’s objections to the 1999 findings of fact and the July 7, 2006 order arising belatedly therefrom are that the 1999 findings of fact were wrong because the father had failed to submit his 1998 tax return as directed and required by compulsory financial disclosure — which cannot be waived (Family Ct Act § 424-a) — * and because the evidence showed he voluntarily left his prior employer and did not adequately seek com *638 parable employment. The recording of the 1999 hearing has been destroyed in the routine course of business, since only recordings from the last five years are retained by the court. Thus, this court cannot review the evidence about voluntarily leaving his employer and not seeking comparable employment satisfactorily. A determination of that issue would require a remand for a new hearing. However, that is not necessary because this court will not uphold the Support Magistrate’s order reducing child support to $92 per week.
Error to Reduce Child Support Without Full Financial Disclosure
Significantly, the father admitted on the argument of the motion that he was aware in 1999 of the reduction of child support granted in his favor. Nonetheless, he continued to pay more than $147 per week in almost all weeks since the findings of fact were issued in May of 1999 until another reduction was ultimately sought by him in 2006. This undermines the argument that he should have been awarded the reduction at all in 1999. The failure to provide his tax return in 1999 as directed and required was a violation of the compulsory financial disclosure law, and the failure is suspicious under these circumstances. The 1999 findings of fact state that the father was given five days to produce his tax returns and financial affidavit *639 and that his petition for modification would be dismissed if he did not do so. Accordingly, when he did not submit his tax return, his petition should have been dismissed in 1999, and it was error to grant it. His submission of a W-2, which may have been only one W-2 of several which he had received for 1998, did not satisfy the requirement that he produce his 1998 tax return. Furthermore, his 1998 income would not necessarily have even approximated his then current 1999 income. The Support Magistrate simply had no authority to waive this tax return requirement.
De Novo Review of Objections
The mother’s attorney for some reason did not raise the above arguments on the motion, though he raised them on this objection procedure. The attorney said in the motion argument that he left to the Support Magistrate’s “discretion” whether or not an order incorporating the 1999 findings of fact should be signed. Under those circumstances, it is hardly surprising that the Support Magistrate decided to sign the order sought by the father.
In appellate practice, arguments not raised below are not considered on appeal, and that is black letter law. However, the determinations of support magistrates are part of Family Court and not of a separate lower court, and this court is in this proceeding reviewing a statutory objection, not an appeal from a lower court (Family Ct Act § 439 [e]). Astonishingly, the statute does not provide any standard for a Family Court judge to apply when reviewing the findings of fact and orders of a Family Court support magistrate, and there apparently is no case law establishing such a standard. It would appear, however, that the determination by a Family Court judge on an objection can be and should be considered as a de novo application because the Family Court judge is the first judge to actually make a determination on the issues which come before the court. All litigants are entitled to a determination by a judge, and if a judge’s hands were to be tied by a support magistrate, litigants would be deprived of their day in court. Accordingly, this court will treat this matter as a de novo application, and will take into consideration the arguments raised for the first time on the objection. Thus, the matter of compulsory financial disclosure, which cannot be waived, even by the court, is relevant, and this court must hold that it was improper for the Support Magistrate to waive submission of the 1998 tax return and to grant a *640 reduction in child support without it. Accordingly, the father’s petition for a downward modification should have been dismissed in 1999.
Public Policy against Overpaid Child Support Eliminating Future Support
Furthermore, this court notes that as a matter of public policy child support overpaid may not be recovered by reducing future support payments. As stated in Matter of Maksimyadis v Maksimyadis (275 AD2d 459, 461 [2000]):
“Although Domestic Relations Law § 236 (B) (7) (a) authorizes a credit against a retroactive support obligation for overpayments made after the commencement of the proceeding (see, Baraby v Baraby, 250 AD2d 201), overpayments may not be recovered by reducing future support payments (see, Baraby v Baraby, supra; Petek v Petek, 239 AD2d 327; Matter of Simmons v Hyland, 235 AD2d 67)” (accord Matter of Colicci v Ruhm, 20 AD3d 891 [4th Dept 2005]).
Thus, the Support Magistrate’s order, even if upheld, cannot result in a calculation that causes future child support not to be paid. What has been overpaid is considered spent and gone, and to have benefitted the parties’ child. The child is obviously expected to need child support in the future. Thus, it is error to cancel future child support based on overpayments in the past. If $92 per week were to be held to be the proper amount of child support, effective in 1999, the resulting calculation certainly can and would cancel arrears determined at that rate, if any — but not future support — till March 2009 or otherwise.
Accordingly, the mother’s objection will be granted. The father will be treated as if the order that he pay $147 per week had remained in place and in effect throughout the period from his 1999 downward modification request until his 2006 downward modification request was filed.
Now, therefore, for the reasons stated above, it is ordered that the objection is granted and the order of July 7, 2006 is vacated, the May 10, 1999 findings of fact are modified as set forth herein, and the petition filed by John L. Stauffer on January 20, 1999 for a reduction in child support is dismissed; and it is further ordered that the child support enforcement unit will recalculate the arrears, if any, in accordance with this decision *641 and order, based on child support owed in the amount of $147 per week until such time as child support is modified, if at all, by a court of competent jurisdiction; and it is further ordered that until and unless otherwise ordered, the father shall continue to pay current child support for the parties’ child at the rate of $147 per week.

 “§ 424-a. Compulsory financial disclosure.
“Except as provided herein: (a) in all support proceedings in family court, there shall be compulsory disclosure by both parties *638 of their respective financial states, provided, however, that this requirement shall not apply to a social services official who is a party in any support proceeding under this act. No showing of special circumstances shall be required before such disclosure is ordered and such disclosure may not be waived by either party or by the court. A sworn statement of net worth shall be filed with the clerk of the court on a date to be fixed by the court, no later than ten days after the return date of the petition. As used in this part, the term ‘net worth’ shall mean the amount by which total assets including income exceed total liabilities including fixed financial obligations. It shall include all income and assets of whatsoever kind and nature and wherever situated and shall include a list of all assets transferred in any manner during the preceding three years, or the length of the marriage, whichever is shorter. . . . All such sworn statements of net worth shall be accompanied by a current and representative paycheck stub and the most recently filed state and federal income tax returns including a copy of the W-2(s) wage and tax statement(s) submitted with the returns. In addition, both parties shall provide information relating to any and all group health plans available to them for the provision of care or other medical benefits by insurance or otherwise for the benefit of the child or children for whom support is sought” (emphasis added).